UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ROBERT BROWN, | : | |
|  | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
|  | : | |
| v. | : | |
|  | : | |
| WELLS FARGO; | : | PLAINTIFF REQUESTS TRIAL BY JURY |
| ANTHONY DIIORIO (individually); | : | |
| CHARLES BAKER (individually); | : | |
| JENNIFER MLOCEK (individually); | : | |
| EDWARD LEONARD (individually); | : | |
| and MICHELLE HELM (individually), | : | |
|  | : | |
| Defendants. | : | |
|  | : | |

Plaintiff, ROBERT BROWN, by and through undersigned counsel hereby files this Civil Action Complaint against Defendants WELLS FARGO, ANTHONY DIIORIO (individually), CHARLES BAKER (individually), JENNIFER MLOCEK (individually), EDWARD LEONARD (individually), and MICHELLE HELM (individually) (collectively "Defendants") and avers the following:

**PARTIES**

1. PLAINTIFF ROBERT BROWN (hereinafter also referred to as "PLAINTIFF") is an African American male who is a resident of the Commonwealth of Pennsylvania.

2. At all times material, Defendant, WELLS FARGO, (hereinafter also referred to as "Defendant WELLS FARGO"), was and still is a miscellaneous corporation organized and existing by virtue of the laws of the Commonwealth of Pennsylvania with a place of business located at 101 North Independence Mall E, Philadelphia, PA 19106.

3. Defendant ANTHONY DIIORIO (hereinafter also referred to as "Defendant DIIORIO") was and still is employed by Defendant WELLS FARGO as the Deputy Director.

4. At all relevant time Defendant DIIORIO maintained supervisory authority over PLAINTIFF.

5. Defendant DIIORIO is a Caucasian male.

6. Defendant CHARLES BAKER (hereinafter also referred to as "Defendant BAKER") was and still is employed by Defendant WELLS FARGO as the Financial Crimes Group Manager – Vice President.

7. At all relevant time Defendant BAKER maintained supervisory authority over PLAINTIFF.

8. Defendant BAKER is a Caucasian male.

9. Defendant JENNIFER MLOCEK (hereinafter also referred to as "Defendant MLOCEK") was and still is employed by Defendant WELLS FARGO as the Employee Relations Consultant.

10. At all relevant time Defendant MLOCEK maintained supervisory authority over PLAINTIFF.

11. Defendant MICHELLE HELM (hereinafter also referred to as "Defendant HELM") was and still is employed by Defendant WELLS FARGO as the Senior Employment Investigator.

12. At all times material, Defendants were the joint employers of PLAINTIFF.

13. At all times material, Defendants were the joint employers of PLAINTIFF. At all times relevant to this civil action Defendants were the joint employers of PLAINTIFF.

**NATURE OF THE CASE**

14. Plaintiff complains pursuant to Section 1981, Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 20003-17 (amended in 1972, 1978, by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"); 42 U.S.C.; the Pennsylvania Human Relations

Act, as amended, 43 P.S. §§ 951, *et. seq.* ("PHRA"), under the laws of the Commonwealth and seeks damages to redress injuries Plaintiff suffered as a result of Defendants' discrimination, harassment, retaliation and the hostile work environment which ultimately led to Plaintiff's constructive discharge from employment for Defendants.

## JURISDICTION AND VENUE

15. This action involves a Question of Federal Law under Section 1981, Title VII of the Civil Rights Act of 1964. The honorable Court also has supplemental jurisdiction over the Commonwealth Law Causes of Action.

16. Venue is proper in the Eastern District of Pennsylvania as PLANTIFF was employed by Defendants and worked in the Philadelphia County, Pennsylvania where the discrimination, harassment and hostile work environment complained of occurred.

17. On or around June 24, 2021, PLAINTIFF filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants as set forth herein. PLAINTIFF's Charge of Discrimination was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

18. On or about November 5, 2021, the EEOC sent a Dismissal and Notice of Rights to PLAINTIFF by electronic mail.

19. This action is hereby commenced within ninety (90) days of receipt of the Dismissal and Notice of Rights.

20. PLAINTIFF's PHRA claims are still pending before PCHR because less than one year has elapsed since Plaintiff filed with the PHRA.

21. After the one year waiting period has elapsed on PLAINTIFF's PHRA claim, PLAINTIFF will amend his complaint to assert the newly ripened causes of action under the PHRA against the parties referenced above. See Fed. R. Civ. P. 15(a) (Courts "freely give leave to amend

when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (Plaintiffs may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

## **MATERIAL FACTS**

22. In or around January 2018, Defendant WELLS FARGO hired PLAINTIFF as the Senior Financial Crimes Consultant.

23. PLAINTIFF worked in Philadelphia, Pennsylvania.

24. Throughout PLAINTIFF'S employment, he performed his job functions in a dutiful manner, and maintained a satisfactory work performance.

25. On or around November 2018, due to PLAINTIFF'S exemplary work performance, Defendants promoted him to Assistant Vice President of Financial Crimes.

26. PLAINTIFF was the only African American Assistant Vice President of Financial Crimes Department.

27. In or around 2019, Defendants transferred PLAINTIFF to a new manager, Defendant BAKER.

28. Defendant BAKER is based out of North Carolina and self-identified as a "redneck".

29. Shortly thereafter, Defendant BAKER began to subject PLAINTIFF to race and/or national origin discrimination and harassment.

30. By way of example, Defendant BAKER would refer to PLAINTIFF, and the only other black employee, Darryl Washington, as "boy".  However, Defendant BAKER would refer to Caucasian employees by their names.

31. In or around February 2020, Defendant Baker decreased PLAINTIFF'S yearly bonus by 40% and did not apply an annual 3% increase to PLAINTIFF'S salary.   When

PLAINTIFF asked Defendant Baker why his bonus was decreased and did not receive the annual salary increase. Defendant Baker informed PLAINITFF that he had increased PLAINTIFF'S bonus, however, Defendant DIORIO decreased the bonus upon review. After further inquiry, Defendant BAKER did not provide any further explanation and told PLAINTIFF to take the matter up with Human Resources. Defendant BAKER did not do the same to PLAINTIFF'S Caucasian coworkers.

32. In or around February 2020, PLAINTIFF complained to Defendant MLOCEK of Defendant BAKER'S behavior toward him. However, in fear of retaliation, PLAINTIFF withdrew his complaint.

33. In or around June 2020, Defendant WELLS FARGO sent out an email observing Juneteenth. During a conference call, Defendant BAKER stated, "I understand there is a holiday tomorrow, but I don't understand what the hell it is." At the time, PLAINTIFF was the only black person on the call.

34. Further, in or around October 2020, Defendant BAKER attempted to coerce PLAINTIFF to lower Mr. Washington's performance review, stating, "the "boy's" rating should be lower." PLAINTIFF did not acquiesce and refused to sign off on the performance review. However, upon information and belief, Defendant BAKER unilaterally lowered Mr. Washington's performance review and signed PLAINTIFF'S name unbeknownst to PLAINTIFF.

35. In mid-November 2020, PLAINTIFF suffered severe symptoms of COVID-19 and was required to quarantine for two weeks per CDC guidelines.

36. PLAINTIFF informed Defendants of same.

37. Later that day, Defendant BAKER insisted that PLAINTIFF send him all of PLAINTIFF'S medical information. PLAINTIFF did not acquiesce, as he had already informed Human Resources and knew Defendant BAKER did not need the medical information.

38. During this time, PLAINTIFF'S mental health began to also decline.

39. On or around mid-November 2020, PLAINTIFF'S treating physician diagnosed PLAINTIFF with anxiety and depression and required to take a leave of absence. PLAINTIFF informed Defendants of same.

40. PLAINTIFF applied and was approved for FMLA beginning November 2020, until Mid-February 2021.

41. Upon his return to work, PLAINTIFF logged into his performance review and received a "unsatisfactory" rating for his work performance. Further, the review stated that PLAINTIFF'S team failed to complete required trainings. The performance review was categorically false. PLAINTIFF had one of the top-performing teams and had completed all trainings prior to PLAINTIFF'S medical leave of absence.

42. Further, PLAINTIFF was required to go over the performance review with a manager and attest to the review on his behalf. Defendants did not provide PLAINTIFF with a chance to attest to the evaluation, and had Defendant BAKER sign off on the review on behalf of PLAINTIFF.

43. Further, Defendant BAKER reassigned PLAINTIFF'S top performer, Alexandra Conway, to a new manager in North Carolina. However, Ms. Conway continues to work at the Philadelphia branch.

44. Defendant BAKER stated that Ms. Conway requested to be removed from PLAINTIFF'S team. However, when PLAINTIFF spoke with Ms. Conway, she stated that she never requested to be removed from the team.

45. Lastly Defendant BAKER again decreased PLAINTIFF'S yearly bonus by approximately 30% and did not apply an annual 3% increase to PLAINTIFF'S salary. When PLAINTIFF asked Defendant Baker why his bonus was decreased and did not receive the annual

salary increase, Defendant BAKER did not provide any explanation and told PLAINTIFF to take the matter up with Human Resources. Defendant BAKER did not do the same to PLAINTIFF'S Caucasian coworkers.

46. On or around April 7, 2021, PLAINTIFF immediately complained to Defendant MLOCEK of Defendant BAKER'S discriminatory and retaliatory behavior. Defendant MLOCEK informed PLAINTIFF that his complaint would be sent to a Human Resource Representative. Thereafter, Defendant HELM took over the investigation.

47. Upon information and belief, other black employees had lodged race/color and/or national origin discrimination and/or disability discrimination complaints against Defendant BAKER.

48. Following PLAINTIFF'S complaint, Defendants conducted a reorganization and placed PLAINTIFF under a new manager.

49. Upon information and belief, Defendant Baker was not been reprimanded and/or disciplined for his conduct toward PLAINTIFF and other black employees that have lodged complaints.

50. Defendants subjected PLAINTIFF to race and/or color discrimination and harassment and retaliation for his complaints of the same and/or for exercising his rights under FMLA.

51. Further, Defendants never corrected PLAINTIFF'S salary.

52. In or around August 2021, due to the severe and pervasive discrimination and harassment, Plaintiff was constructively discharged from his employment. He was forced to seek employment elsewhere, as any reasonable employee would do under such circumstances.

53. As a result of Defendants' actions, PLAINTIFF felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

54. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and PLAINTIFF also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

55. That as a result of Defendants' conduct, the PLAINTIFF was caused to sustain serious and permanent personal injuries, including but not limited to permanent psychological injuries.

56. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, PLAINTIFF demands Punitive Damages against all the Defendants jointly and severally.

57. PLAINTIFF further claims aggravation, activation and/or exacerbation of any preexisting condition.

58. PLAINTIFF claims that Defendants unlawfully discriminated against PLAINTIFF because of his race, national origin, and because he complained of an opposed the unlawful conduct of Defendants related to the above protected class.

59. PLAINTIFF further claims constructive and/or actual discharge to the extent PLAINTIFF is terminated from PLAINTIFF's position as a result of the unlawful discrimination and retaliation.

60. The above are just some examples, of some of the discrimination and retaliation to which Defendants subjected PLAINTIFF to on a continuous and on-going basis throughout PLAINTIFF's employment.

61. The Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

62. PLAINTIFF claims alternatively that PLAINTIFF is an Independent Contractor, and PLAINTIFF makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors. Furthermore, in such case, PLAINTIFF claims that Defendant owed and breached its duty to PLAINTIFF to prevent the harassment, discrimination, and retaliation and is liable therefore for negligence.

63. PLAINTIFF claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

**COUNT I**
**UNDER FEDERAL LAW**
**S.C. SECTION 1981**
**(against all named Defendants)**

64. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this complaint.

65. 42 USC Section 1981 states in relevant part as follows:

> (a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

66. PLAINTIFF was discriminated against by Defendants because of his race as provided under 42 USC Section 1981 and has suffered damages as set forth herein.

67. PLAINTIFF claims unlawful retaliation under 42 U.S.C. 1981 due to Defendant's termination his employment due to his race and/or national origin.

68. PLAINTIFF also claims unlawful retaliation under 42 U.S.C. 1981 for his

opposition to Defendants' unlawful employment practices.

## COUNT II
## DISCRIMINATION UNDER TITLE VII
## HOSTILE WORK ENVIRONMENT AND DISPARATE TREATMENT
**(against corporate Defendants only)**

69. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this complaint.

70. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. PLAINTIFF complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race.

71. SEC. 2000e-2. *[Section 703]* states as follows:

> (a) Employer practices
> It shall be an unlawful employment practice for an employer -
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

72. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against PLAINTIFF because of his race and/or national origin.

73. The discrimination and harassment described above and incorporated into Count IV was severe and pervasive and created a hostile work environment for PLAINTIFF.

74. Defendants subjected PLAINTIFF to discrimination and harassment due to PLAINTIFF'S race and/or national origin.

75. Defendants subjected PLAINTIFF to discrimination and harassment by unlawfully terminating his employment due to his race and/or national origin.

76. PLAINTIFF hereby makes a claim against Defendants under all of the applicable paragraphs of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended.

## COUNT III
## RETALIATION UNDER TITLE VII
### (against corporate Defendants only)

77. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this complaint.

78. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer: "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter."

79. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.* by retaliating against Plaintiff with respect to the terms, conditions, and/or privileges, of his employment, and/or for wrongfully terminating his employment due to his race and/or national origin, and because of his opposition to and reporting of the unlawful employment practices of Defendants.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFF demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages,

liquidated damages, statutory damaged, attorney's fees, costs, and disbursement of action; and for such other relief as the Court deems just and proper.

                          **DEREK SMITH LAW GROUP, PLLC**

                  By:      /s/Erica A. Shikunov
                            Erica A. Shikunov, Esquire
                            1835 Market Street, Suite 2950
                            Philadelphia, Pennsylvania 19103
                            Phone: 215.391.4790
                            Email: erica@dereksmithlaw.com

DATED: February 3, 2022